UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| FELICIA CHAPMAN, ) | |
| ) | |
|   Plaintiff, ) | |
| ) | |
|     vs. ) | CAUSE NO. 1:14-cv-1411-WTL-TAB |
| ) | |
| CAROLYN W. COLVIN, COMMISSIONER ) | |
| OF SOCIAL SECURITY, ) | |
| ) | |
|   Defendant. ) | |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Felicia Chapman requests judicial review of the final decision of Defendant Carolyn Colvin, Commissioner of the Social Security Administration ("Commissioner"), denying her application for Disability Insurance Benefits ("DIB") and Supplemental Insurance Benefits ("SSI") under Titles II and XVI of the Social Security Act ("the Act"). The Court rules as follows.

### I. PROCEDURAL HISTORY

Chapman filed her application for DIB and SSI in September 2011, alleging disability beginning on April 19, 2011, due to obesity, dextroscoliosis, carpal tunnel syndrome, and asthma. Her application was denied initially and upon reconsideration, whereupon she requested and was granted a hearing before an administrative law judge ("ALJ"). Chapman was represented by counsel at the hearing, which was held on April 22, 2013, before ALJ Monica LaPolt. Chapman and a vocational expert testified at the hearing. Thereafter, on May 15, 2013, the ALJ rendered her decision in which she concluded that Chapman was not disabled as defined by the Act. The Appeals Council denied Chapman's request for review of the ALJ=s decision, and Chapman filed this timely action for judicial review.

## II. EVIDENCE OF RECORD

The evidence of record is aptly set forth in Chapman's brief. Specific facts are set forth in the discussion section below where relevant.

## III. APPLICABLE STANDARD

Disability is defined as "the inability to engage in any substantial gainful activity by reason of a medically determinable mental or physical impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months." 42 U.S.C. ' 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but any other kind of gainful employment that exists in the national economy, considering her age, education, and work experience. 42 U.S.C. ' 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity she is not disabled, despite her medical condition and other factors. 20 C.F.R. ' 404.1520(b).[1] At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits her ability to perform basic work activities), she is not disabled. 20 C.F.R. ' 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. ' 404.1520(d). At step four, if the claimant is able to perform her past relevant work, she is not disabled. 20

---

[1] The Code of Federal Regulations contains separate sections relating to DIB and SSI that are identical in all respects relevant to this case. For the sake of simplicity, this Entry contains citations to DIB sections only.

C.F.R. ' 404.1520(f). At step five, if the claimant can perform any other work in the national economy, she is not disabled. 20 C.F.R. ' 404.1520(g).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id*., and this court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). The ALJ is required to articulate only a minimal, but legitimate, justification for her acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). In order to be affirmed, the ALJ must articulate her analysis of the evidence in her decision; while she "is not required to address every piece of evidence or testimony," she must "provide some glimpse into her reasoning . . . [and] build an accurate and logical bridge from the evidence to her conclusion." *Id.*

## IV. THE ALJ'S DECISION

The ALJ found at step one that Chapman had not engaged in substantial gainful activity since her alleged onset date of April 19, 2011. At steps two and three, the ALJ found that Chapman had the severe impairments of obesity, mild dextroscoliosis, carpal tunnel syndrome on the right side, and asthma, but that her impairments, singly or in combination, did not meet or medically equal a listed impairment. At step four, the ALJ concluded that Chapman had

> the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the individual can occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; occasionally finger with the non-dominant left hand; have the option to sit or stand, but not be off task more than five percent of the

workday; and have no more than moderate exposure to heat, cold, or airborne irritants.

Record at 66. Given this residual functional capacity ("RFC"), the ALJ determined that Chapman was able to perform her past relevant work as a telephone solicitor. Accordingly, the ALJ concluded that Chapman was not disabled as defined by the Act.

## V. **DISCUSSION**

Chapman argues that the ALJ erred in several respects. Each of her arguments is addressed, in turn, below.

### A. ALJ's Reliance on Dr. Salim's Report

Chapman argues that the ALJ's finding at step 3 that her carpal tunnel syndrome does not meet or equal a Listing is flawed because it relies on the report of consultative examiner Dr. Salim, whose report Chapman characterizes as "internally inconsistent." Specifically, Dr. Salim reported that her examination found the following:

> Strength was 5/5 in all extremities. Fine finger skills, gross hand exam and grip strength were normal bilaterally. . . . Normal [range of motion in] upper extremities except right place dorsi flexion 20 degrees, palmar flexion 20 [degrees].

Record at 506. In her "Impression and Medical Source Statement" at the conclusion of her report, Dr. Salim stated "[c]arpal tunnel syndrome but decreased hand grip and range of movement would need surgical intervention." *Id.* Chapman argues that this conclusion contradicts Dr. Salim's finding of normal grip strength and "calls in to question the validity and reliability of Dr. Salim's entire report." Dkt. 14 at 14. While Dr. Salim's report certainly is ambiguous with regard to the effects of Chapman's carpal tunnel syndrome,[2] Chapman's specific

---

[2] The Court notes that in addition to the "normal" finding and the somewhat indecipherable "impression," the report also notes that her "hand grip" was "zero" on the right and ".8 pounds" on the left. Record at 505. The Court has no idea what a normal result is on

4

argument is that the ALJ should not have relied upon it to support her finding that Chapman's carpal tunnel syndrome did not meet or equal Listings 1.02(B) and 11.14. However, as the claimant, Chapman "has the burden of showing that [her] impairments meet a listing, and [she] must show that [her] impairments satisfy all of the various criteria specified in the listing." *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006). Chapman has not even attempted to do so; other than to point out the problems with Dr. Salim's report, she has not pointed to any evidence—including her own testimony—that suggests that she satisfies the Listings. Accordingly, she is not entitled to remand with regard to step 3. That said, given the ambiguity and errors in Dr. Salim's report, it would be wise for the ALJ to seek clarification from Dr. Salim if she still wishes to rely on the report.

## B. ALJ's RFC Determination

Chapman next makes several arguments regarding the ALJ's RFC determination, characterizing it as "wrought with error." First, she notes that two of Chapman's doctors opined that she was unable to lift and/or carry more than five pounds but the ALJ did not include that limitation in her RFC finding. However, the ALJ expressly gave those two physicians' opinions no weight, and Chapman does not even acknowledge that decision by the ALJ, let alone give any reason why it was erroneous. "It is not this court's responsibility to research and construct the parties' arguments," *Draper v. Martin*, 664 F.3d 1110, 1114 (7th Cir. 2011), and the Court will not do so here. Similarly, Chapman points out that the ALJ "allows for only occasional fingering with the non-dominant left hand in the RFC, yet remains silent on any limitations Chapman may

---

that test, but presumably "zero" is abnormal. In addition, the report does not appear to have been proofread by the doctor, as it contains what the Court assumes are typographical errors as well: "Patient is a 39-year-old African-American female feminist due to back pain . . ." and "[s]he has tried using snickers as fatuous without much improvement . . . ." *Id.* at 504.

have on her dominant and most certainly more severely impaired right hand." Dkt. No. 14 at 16. However, Chapman points to no medical source[3] who opined that she had manipulative limitations on the right side.[4]

Chapman also argues that the ALJ's RFC determination is faulty because it contains a sit/stand option but fails to specify how frequently she needs to alternate between sitting and standing. However, in the ALJ's hypothetical question to the vocational expert that tracks her RFC determination, the ALJ specifies that "the individual would have the opportunity to sit or stand alternatively *at will*, providing that they're not off task more than five percent of the work period." Record at 51-52 (emphasis added). The vocational expert testified that such an individual would be able to perform Chapman's past relevant work as a telephone solicitor. The ALJ's RFC determination is clear—Chapman is limited to work that permits her to alternate between sitting and standing as often as she needs to, as long as she is not off task more than five percent of her work day. The record supports her finding that Chapman could still work as a telephone solicitor even with this limitation. There is no error.[5]

---

[3]The ALJ's treatment of Chapman's own testimony about her limitations is addressed below.

[4]There is a possibility that Chapman's treating physicians were confused when they completed the medical statement form due to the ambiguity of the form's instructions. It is not entirely clear whether they meant that Chapman was constantly *limited* with regard to fine manipulation with her right hand or constantly *able to perform* fine manipulation with her right hand. Given that it appears undisputed that her right hand was worse than her left hand, it seems that they may have meant the former, not the latter.

[5]Chapman's citation to SSR 96-9p is misplaced; the rule of law cited by Chapman applies when an ALJ finds that a claimant cannot do her past relevant work because of her limitations but "is able to do other work." So, too, is Chapman's citation to *Johnson v. Barnhart*, No. 04-3438-cv-WH-FS, 2006 WL 373896 (W.D. Mo. Feb. 16, 2006), which relates to claimants "limited to unskilled work"; Chapman's past relevant work as a telephone solicitor was semi-skilled. In any event, the fact that SSR 83-12 finds that "[u]nskilled types of jobs . . . cannot ordinarily sit or stand at will" does not make that true of all unskilled jobs and would not prevent an ALJ from relying on a vocational expert's testimony that a particular job does, in fact, allow such flexibility.

### C. ALJ's Treatment of Chapman's Allegations of Subjective Symptoms

Chapman next argues that the ALJ erred in her treatment of Chapman's allegations of pain and other subjective symptoms. The Court agrees.

As the ALJ correctly acknowledged, with regard to subjective symptoms such as pain, if a claimant has a medically determinable impairment that is reasonably expected to produce pain, then the ALJ must evaluate the credibility of the claimant's testimony regarding the extent of that pain. "In determining credibility an ALJ must consider several factors, including the claimant's daily activities, her level of pain or symptoms, aggravating factors, medication, treatment, and limitations," *see* 20 C.F.R. ' 404.1529(c); S.S.R. 96-7p, and justify the finding with specific reasons. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). The regulations further provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. ' 404.1529(c)(2). Additionally, because the ALJ evaluates credibility by questioning and observing a live witness, not simply a cold record, an ALJ=s credibility determination is reviewed deferentially and should be overturned only if it is "patently wrong." *See Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008). However, "[t]he determination of credibility must contain specific reasons for the credibility finding" and "must be supported by the evidence and must be specific enough to enable the claimant and a reviewing body to understand the reasoning." *Id.* (citing *Arnold v. Barnhart*, 473 F.3d 816, 822 (7th Cir. 2007)).

The ALJ concluded that "[a]fter careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and

7

limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." Record at 70. In the discussion that follows, the ALJ noted the several reasons for finding Chapman not entirely credible.

First, the ALJ noted that Chapman's activities of daily living included attending to her personal hygiene, preparing simple meals, driving, completing simple household chores, and raising her seven-year-old daughter. However, the Seventh Circuit has made clear that the ability to perform minimal household chores, engage in periodic social activities, and care for young children does not by itself equate to residual functional capacity to work in the national economy. *See, e.g.*, *Engstrand v. Colvin*, 788 F.3d 655, 661 (7th Cir. 2015) ("working sporadically or performing household chores are [sic] not inconsistent with being unable to engage in substantial gainful activity"); *accord Beardsley v. Colvin*, 758 F.3d 834, 838 (7th Cir. 2014); *Gentle v. Barnhart*, 430 F.3d 865, 867 (7th Cir. 2005); *Carradine v. Barnhart*, 360 F.3d 751 (7th Cir. 2004). This is especially so when the evidence demonstrates that the claimant is able to complete those tasks only with great strain. *See Beardsley*, 758 F.3d at 838; *Craft*, 539 F.3d at 680. Here, Chapman testified that housekeeping was "like a few minutes out of the day. Fifteen, 20 minutes, then I have to stop, sit down, rest, prop up pillows. And then I try to go back to the task." Record at 37. With regard to caring for her daughter, she testified:

> Well, basically, she does everything for me. I don't have to really do too much of anything for her, other than try to cook. A lot of times, I get meals that she can prepare herself, that she can put in the microwave, lunch meat, sandwiches, or things of that nature. Or my mom will cook.

*Id.* She further testified that her mother, who lives with her, did the laundry and most of the cleaning, that she would not be able to care for her daughter without the help of her mother and her adult son. *Id.* at 38. The evidence of record regarding Chapman's daily activities does not support the ALJ's credibility determination.

8

Next, the ALJ noted that Chapman "was working 15 hours per week at a fast food restaurant as of December 2011. Although this is not disqualifying substantial gainful activity, it demonstrates that the claimant's abilities have, at least at times, been somewhat greater than she has generally reported." Record at 71. The fact that Chapman—who as a single mother needed to support herself and her child—tried to work 15 hours per week for a few months might well have been the type of "heroic measure" that a disabled person takes in spite of the pain and other symptoms she experiences. *Gentle*, 430 F.3d at 867. The ALJ did not ask Chapman about her experience working at that job, how she was able to work given the symptoms about which she testified, and why she left the job. Without that information, Chapman's short attempt at work does not support the ALJ's findings that her allegation of disabling pain is not credible.

The only other reason given by the ALJ for finding Chapman less than fully credible is her belief that "[t]he intensity and severity of [her] back pain is not fully supported by the medical record." Record at 71. As noted above, a credibility determination may not be based solely on the lack of objective evidence to support claims regarding subjective symptoms. Further, the ALJ points to no medical evidence to support her belief that the findings on various tests do not support the extent of pain alleged by Chapman, and "ALJs are required to rely on expert opinions instead of determining the significance of particular medical findings themselves." *Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014), *as amended on denial of reh'g* (Oct. 24, 2014).

Because the reasons given by the ALJ for discrediting Chapman's allegation of disabling pain are not supported by the record, this case must be remanded for reconsideration of the impact of Chapman's subjective symptoms on her ability to perform substantial gainful activity.

9

## VI.  CONCLUSION

For the reasons set forth above, the Commissioner=s decision is **REVERSED** and this case is **REMANDED** for further proceedings consistent with this Entry.

SO ORDERED: 9/15/15

*William T Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification